IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Pamela Clark, | : | |
| Plaintiff | : | Civil Action 2:08-cv-00065 |
| v. | : | Judge Frost |
| Michael J. Astrue, | : | Magistrate Judge Abel |
| Commissioner of Social Security, | | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

Plaintiff Pamela Clark brings this action under 42 U.S.C. §§405(g) for review of a final decision of the Commissioner of Social Security terminating her Supplemental Security Income benefits. This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.** In June 1998, plaintiff Pamela Clark was awarded SSI benefits with an onset date of March 1, 1998. She was then 30 years old. Plaintiff was found to meet Listing 12.05(C). (R. 43.) On May 24, 2002, the Agency, after conducting a Cessation or Continuance of Disability Review ("CDR"), concluded that Clark's disability continued. (R. 44-45.) In 2005, another CFR was completed, and the Agency determined that, effective August 1, 2005, Clark, then 36 years old, was no longer disabled for purposes of SSI and that her benefit entitlement would terminate at the end of October 2005. (R. 46.) The decision was confirmed on reconsideration. (R. 48.) Clark requested a hearing before an administrative law judge. (R. 64-65.)

On March 8, 2007, a hearing was held, at which plaintiff, represented by a lay representative, appeared and testified. (R. 471-507.) A vocational expert also testified. On March 30, 2007, the administrative law judge issued a decision finding that plaintiff's medical condition had improved as of August 1, 2005, and that this medical improvement related to Clark's ability to work. (R. 32.) The administrative law judge concluded that Clark was no longer disabled and that she could perform a significant number of light jobs. When the Appeals Council denied plaintiff's request for review, the decision of the administrative law judge became the final agency decision. (R. 8-11.)

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the administrative law judge's determination that Clark's conditions no longer meet the disability criteria of Listing 12.05C is premised upon legal error, lacks the supports of substantial evidence, and requires reversal.

**Age, Education, and Work Experience.** Pamela Clark was born September 1, 1968. (R. 69.) She completed the ninth grade. (R. 476.) She has worked as a hand packer and as a fast food worker. (R. 501.)

**Plaintiff's Testimony.** The administrative law judge fairly summarized 's testimony as follows:

> At the hearing, the claimant testified that she had COPD and became short of breath with physical activity. She used an inhaler every day. The claimant said that she had reduced her smoking to about five cigarettes per day. The claimant had lower back pain and said that pain medications helped her by reducing her pain to a level of three on a one to 10 pain scale. She had migraines every day. The claimant sat in a dark room and put a damp towel on her head when she had a headache. She had been to

2

> the hospital for her migraines. The claimant said that she had mood swings and anger and said she was bipolar. She had not had any counseling, but saw her family doctor every three months.
>
> The claimant said that she could sit for about a half hour. She could use her hands to button and zip her clothes. She could lift a gallon of milk. The claimant could climb steps if she used the handrail. She sometimes used the city bus for transportation, but not often. The claimant walked a little. She visited with friends and relatives. The claimant sometimes read her Bible. She said that she drove a little each day.

(R. 24.) Clark estimated that she could only stand or walk for twenty to thirty minutes before having to sit down because of leg pain. (R. 490.) She also reported that she had recently begin dropping things due to tingling and numbness in her hands. (R. 490-91.) Clark did not perform any cooking, washing dishes, or sweeping, mopping, and vacuuming because her daughter did it, although she believed she could do it. (R. 492.) She has a flower garden that she works in "every once in awhile." (R. 493.)

Jessica Fraley, Clark's case manager at the Guernsey County Department of Job and Family Services, also testified. (R. 18.) Ms. Fraley had worked with Clark for almost eight years. She testified that Clark's health had deteriorated significantly over that time. She noted a change in Clark's behavioral problems. She described Clark as "[s]lower thinking, slower moving." (R. 497.) Clark presented at her agency exhibiting stroke-like symptoms with the weakening of her left side. *Id.* Ms. Fraley also reported that Clark suffered from a lot of depression and had difficulty with family problems. (R. 499.)

**Medical Evidence of Record.** The administrative law judge's decision fairly sets out the relevant medical evidence of record. This Report and Recommendation will only briefly summarize that evidence regarding her psychological impairments.

Susan W. West, Ph.D. On April 27, 1998, Dr. West, a psychologist, evaluated Clark at the request of the state agency. (R. 252-58.) Clark was polite and cooperative throughout the evaluation process. On mental status examination, Clark did not exhibit any impulsive or compulsive tendencies. She understood the nature of the interview and appeared motivated to cooperate. She did not exhibit any tendencies to deliberately exaggerate or minimize her current or past difficulties. Clark's speech was of normal rate and rhythm. She was described as being very verbal. She was relevant and coherent. Plaintiff's mood was euthymic with full and appropriate affect, although she reported constant depression. She had difficulty with her appetite and sleep. She did not enjoy her day-to-day activities. Clark demonstrated minimal insight into her emotional functioning, although her reasoning and judgment were age appropriate. Dr. West concluded that Clark could participate in decisions affecting her future, conduct her own living arrangements, cooperate in treatment, and manageher own funds. (R. 254.)

Dr. West administered the WAIS-III. Clark obtained a verbal IQ score of 70, a performance IQ score of 76, and a full scale IQ score of 70. Dr West reported:

> These findings indicate a relative cognitive weakness in the area of word knowledge and verbal fluency, as well as visual motor coordination, speed, and concentration. The results indicate the presence of relative

4

> cognitive strengths in the areas of planning, logical thinking, and social knowledge, as well as in short term auditory memory and concentration. Her level of effort and interest during the testing varied, but was generally low. It appeared that she wanted to talk about herself, and, when that was discouraged, would stare into space for long periods of time before answering. Nonetheless, it is believed that these findings are an adequately reliable and valid assessment of her current intellectual and cognitive functioning.

(R. 255.)

Dr. West also administered the Wechsler Memory Scale-III. Clark obtained the following indexed scores: auditory immediate - 83; visual immediate - 75; immediate memory - 74; auditory delayed -74; and working memory - 74. Dr. West indicated that these findings were consistent with the score of her full scale IQ and did not reveal that she had any significant deficits in memory. (R. 255.) On the Wechsler Individual Achievement Test, Clark obtained a basic reading standard score of 59 and a reading comprehension score of 59, demonstrating a significant discrepancy between ability and achievement with regard to both basic reading and reading comprehension. Her grade equivalent scores were 4.2 for basic reading and 2.3 for reading comprehension. (R. 256.)

Dr. West diagnosed somatization disorder; depressive disorder, not otherwise specified; reading disorder; personality disorder, not otherwise specified with dependent , borderline, and antisocial features; and borderline intellectual functioning. Dr. West assigned a current Global Assessment of Functioning ("GAF") score of 70. Dr. West concluded:

> [T]he claimant would be able to related adaptively with fellow workers and supervisors. The findings indicated that the claimant is able to understand, follow, and remember simple directions and instructions. She would be able to maintain adequate attention and concentration in order to perform simple repetitive tasks, as well as to maintain adequate persistence and pace, if she chose to do so. The findings indicate that the claimant would have mild impairment in being able to deal with the stress and pressures associated with day to day work activity, given her current cognitive and psychological functioning.

(R. 257.)

<u>Marianne N. Collins, Ph.D.</u> On June 19, 1998, Dr. Collins, a psychologist, completed a psychiatric review technique. (R. 259-68.) Dr. Collins concluded that Clark met Listing 12.05C. (R. 260.) Dr. Collins noted that Clark had a marked restriction of activities of daily living. (R. 267.)

<u>James Spindler, M.S.</u> On May 14, 2002, Mr. Spindler, a psychologist, evaluated Clark at the request of the Bureau of Disability Determination. (R. 299-304.) Plaintiff was oriented in all three spheres. She could recall three out of three objects after five minutes. She accurately recited five digits forward and three backwards. She could correctly calculate how much change she should receive if she payed for six dollars worth of gas with a ten dollar bill. Mr. Spindler believed that she was functioning in the average range of intelligence. (R. 302.)

Clark reported that she could shop for clothing, food, and other items, but her boyfriend did the majority of the shopping and paid the bills. (R. 302.) She did not have a checking or savings account. Mr. Spindler concluded that she had an adequate level of knowledge for most aspects of daily living. *Id.* Dr. Spindler diagnosed depressive

6

disorder, not otherwise specified and borderline intellectual functioning per Dr. West. Ph.D. (R. 303.)

On May 31, 2005, Mr. Spindler performed a second evaluation at the request of the Bureau of Disability Determination. Clark reported that she dropped out of school after completing the ninth grade in a learning disabled program. (R. 294.) Her grades were generally Cs and Ds. *Id.*

Plaintiff had difficulty staying focused on the evaluation process. (R. 295.) Clark was alert and oriented in three spheres. She could recall four out of five objects after five minutes and accurately recited five digits forward and three digits backward. She knew the correct change she should received if she purchased six dollars worth of gasoline and paid for it was a ten dollar bill. She knew the current president of the United States. Mr. Spindler concluded that Clark was functioning in the borderline range of intelligence as compared with others her age. (R .296.)

Mr. Spindler made no Axis I diagnosis, and diagnosed borderline intellectual functioning. He assigned a GAF score of 65. (R. 297.) With respect to Clark's work-related mental abilities, Mr. Spindler concluded:

> 1. The claimant's mental ability to relate to others, including fellow workers and supervisors is mildly impaired due to her borderline intellectual functioning. Claimant gets along with her parents but has very little interaction with her siblings. She has a couple of friends with whom she is actively engaged and said that when she was employed she had no difficulty getting along with supervisors or coworkers.

2. The claimant's mental ability to understand, remember, and follow instructions is mildly impaired due to her borderline intellectual functioning. During the interview, Pamela was able to follow instructions and had no major problems recalling background information.

3. The claimant's mental ability to maintain attention, concentration, persistence and pace to perform simple repetitive tasks is mildly impaired due to her borderline intellectual functioning. During this interview, Pamela was able to recall four of five objects and accurately recited five digits generally received good job performance ratings, but was also told that she was a little slow.

4. The claimant's ability to withstand the stress and pressure associated with day-to-day work activities is mildly impaired due to her borderline intellectual functioning. Claimant said that she is sometimes a little moody but she does not feel that she has a major problem with controlling her temper.

5. The claimant appears to have the mental ability to manage her funds should she be granted benefits. She has an adequate level of knowledge for most aspects of daily living. Her judgment appears to be adequate for most routine matters.

(R. 297-98.)

<u>Patricia Semmelman</u>. On July 26, 2005, Ms. Semmelman, a medical consultant, noted that from a psychological standpoint, plaintiff had substantial medical improvement. Ms. Semmelman noted that Clark had borderline intellectual functioning rather than mental retardation. (R. 304.)

Ms. Semmelman completed a mental residual functional capacity assessment. With respect to understanding and memory, Clark was moderately limited in her ability to understand and remember detailed instructions. With respect to sustained concentration and persistence, Clark was moderately limited in her ability to carry out

8

detailed instructions. Clark was found to be not significantly limited with respect to social interaction. With respect to adaption, Clark was moderately limited in her ability to respond appropriately to changes in the work setting. (R. 305-06.) Ms. Semmelman assessed Clark's functional capacity:

> This claimant is diagnosed with Borderline Intellectual functioning. Her IQ's from 5/98 were V70, P76 and FS 70. She was granted on the basis of MR (even though diagnosed with BIF at the time of the original CE) and the "C" criteria of Affective Disorder. Current adaptive function is at least of the level of BIF. Current psychological evaluations showed that she had no difficulty staying focused and did not appear depressed. She stated that she is sometimes moody but that she does not have a problem controlling her temper. When asked directly by the CE if she is depressed, she states that she seldom feels depressed. She does not meet or equal a listing.
> Clmt lives with her daughter. She gets up and gets her daughter off to school. She will do chores such as washing dishes, sweeps and does laundry. She said she takes naps during the day. She talks to friends and enjoys playing cards. She drives and is able to shop. She manages her own affairs.
> C/E doctor notes that ". . .ability to relate is mildly impaired. . . ability to understand, remember, and follow instructions is mildly impaired. . .ability to maintain attention, concentration, persistence and pace to perform SRT is mildly impaired. . . ability to withstand the stress and pressure is mildly impaired." This does not differ with this MRFC.
> Clmt should be able to maintain attention to perform basic tasks which are relatively static. She should be able to interact with co-workers and the public.

(R. 307.)

<u>Catherine Flynn</u>. On January 13, 2006, Catherine Flynn, a medical consultant, completed a mental residual functional capacity assessment. She concluded:

> This claimant's only current psychological deficit is an innate IQ of V70, P76, and FS70. This will impose marked limitations on her ability to process complex interactions. Her ability to process simple instructions is

intact. She can complete simple, routine, independent activities without inordinate supervision.

(R. 367.)

### Administrative Law Judge's Findings.

1. The claimant was found to be "disabled," within the meaning of the Social Security Act, beginning March 1, 1998, and she has not engaged in substantial gainful activity since that date.

2. The medical evidence establishes that the claimant currently has severe impairments of COPD/bronchitis, headaches, borderline intellectual functioning, and depression.

3. The impairments present as of May 2002, the time of the most recent favorable medical decision that the claimant was "disabled," were depression and learning problems.

4. The previous medical evidence established that the claimant's impairments were attended with the same signs and findings as those published in Section 12,05C of 20 CFR Part 404, Appendix 1 to Subpart P (Listing of Impairments).

5. The evidence fails to establish that the claimant has a mental impairment that currently meets or equals the severity of an impairment described in Appendix 1, Subpart P, Regulations No. 4.

6. Since August 1, 2005, the claimant has lacked the residual functional capacity to do greater than light exertion work activity if she is (1) restricted from climbing ropes, ladders, or scaffolds; (2) restricted from work with exposure to hazards, temperature extremes or humidity, or pulmonary irritants; (3) restricted from the use of repetitive foot controls on the left; (4) restricted from work involving complex or detailed instructions; (5) limited to lows stress work activity (no production quotas); and (6) restricted from work requiring her to maintain concentration on a single task for longer than 15 minutes at a time.

7. The claimant's subjective allegations lack credibility to the extent that they purport to describe a condition of continuing disability within the meaning of the Social Security Act and Regulations.

8. The claimant is unable to perform her past relevant work as a hand packer or a fast food worker.

9. Beginning August 1, 2005, the claimant had the residual functional capacity to perform the full range of light work, reduced by the functional limitations set forth in Finding No. 6.

10. As of the alleged termination of disability date though the date of this decision, the claimant was less than 50 years old, which classifies her as a "younger individual" (20 CFR 416.963). The claimant's disability ceased on August 1, 2005.

11. The claimant has a ninth grade "limited" education (20 CFR 416.964).

12. The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled functions of other work (20 CFR 416.968).

13. Considering an exertional capacity for light work and the claimant's education and work experience, section 416.969 and Rule No. 202.17, Table No. 2 of Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

14. The claimant's functional limitations do not allow her to perform the full range of light work. However, using Vocational Rule 202.17 as a framework for decision making, the claimant can perform other jobs which exist in significant numbers in the national economy. Examples of such jobs are lens inserter, dowel inspector, and final assembler at the sedentary exertion level and bench assembler, photocopy machine operator, and information clerk at the light exertional level. There are 7,500 such sedentary jobs and at least 13,000 light jobs in the region of Dayton, Ohio, and those jobs exist in proportionate and significant numbers nationwide.

15. The claimant's disability ceased on August 1, 2005.

(R. 32-33.)

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id*. *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the administrative law judge's determination that Clark's conditions no longer meet the disability criteria for Listing 12.05C is premised on legal error, lacks the support of substantial evidence, and requires reversal. Clark maintains that the medical evidence of record proves that the administrative law judge erred in evaluating whether she has demonstrated medical

improvement. Clark argues that the finding of medical improvement is based on a supposed change or improvement in her intellectual functioning even though there is no evidence showing that her intellectual functioning improved. No new intelligence testing has been performed. Plaintiff contends that there is a rebuttable presumption that mental retardation is a condition that remains constant throughout life.

Plaintiff argues that because she continues to have an IQ between 60 and 70, substantial evidence proves that there has been no work-related medical improvement in regard to her IQ and the first prong of Listing 12.05C. The second prong also continues to be satisfied, and the Commissioner has not disputed that she is restricted to a reduced range of light work activity. A restriction to sedentary or light activity constitutes an additional and significant work-related limitation of function.

**Analysis.** Under 42 U.S.C. § 423(f), a recipient of benefits may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by:

> (1) substantial evidence which demonstrates that--
>
> (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
>
> (B) the individual is now able to engage in substantial gainful activity; or
>
> . . .

(4) substantial evidence (which may be evidence on the record at the time any prior determination of the entitlement to benefits based on disability was made, or newly obtained evidence which relates to that determination) which demonstrates that a prior determination was in error.

42 U.S.C. § 423(f).

Plaintiff argues that she meets or equals Listing 12.05C, which provides in pertinent part:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations. For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work. Paragraph D contains the same functional criteria that are required under paragraph B of the other mental disorders listings.
> . . .
> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a

physical or other mental impairment imposing an additional and significant work-related limitation of function. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1.

The administrative law judge's opinion suggests that he believes that the prior conclusion that determined she met Listing 12.05C was an error. The administrative law judge stated:

> There is no evidence of mental retardation prior to age 22. In her prior application, the claimant said she was a slow learner and could not read or spell very well, but she denied a history of special education, and said she left school in ninth grade due to pregnancy (Exhibits 2E, 20F). The claimant was able to read correspondence sent in regard to her application (Exhibit 2E). In her work history, the claimant indicated that when she worked as a wrapper at a candle factory, she also answered the telephone and did secretarial work (Exhibit 6e at 7). She also reported working at Nationwide Insurance, where she answered the telephone and did filing. The claimant tested with Verbal and Full Scale I.Q. scores of 70, but tested with Performance I.Q. of 76, and general and working memory scores of 74, consistent with her presentation of borderline intellectual functioning. She stated that she took an oral driver's license exam but also said that she reads the Bible and enjoys playing cards and board games. She was able to complete the forms for her disability application (Exhibits 1E, 5E, 9E, 10E). In her prior application, the claimant indicated that she read a lot and put puzzles together (Exhibit 1E at 4). The claimant stated that she stopped working for reasons related to her physical health. The evidence documenting the claimant's overall language use and recognition, and past work supports a level of adaptive behavioral functioning that lacks the correlates of mental retardation.

(R. 29-30.) The administrative law judge concluded, however, that Clark was no longer under a disability because there was medical improvement in her condition.

The record contains substantial evidence to support the administrative law judge's conclusion that plaintiff did not meet or equal the criteria for mental

15

retardation. None of the examiners diagnosed plaintiff with mental retardation. Instead, Clark was diagnosed with borderline intellectual functioning. Plaintiff was assigned GAF scores of 70 (R. 254) and 65 (R. 303). Mr. Spindler noted only mild limitations in her abilities to relate to others; to understand, remember and follow instructions; to maintain attention concentration, persistence, and pace to perform simple, repetitive tasks. (R. 303.)

Plaintiff also does not have significant deficits in adaptive behavior. Dr. West concluded that Clark could participate in decisions affecting her future, conduct her own living arrangements, cooperate in treatment, and manager her own funds. (R. 254.) Furthermore, Clark could shop for clothing, food, and other items. (R. 302.) Consequently, there is substantial evidence in the record supporting the administrative law judge's determination that plaintiff did not meet Listing 12.05C.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED**. It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in

question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

s/Mark R.  Abel
United States Magistrate Judge
